IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KANEESHA R. STOKES**, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No: 1: 22-cv-01377-JMC |
| **IKEA US RETAIL, LLC**, | | |
| | * | |
| *Defendant.* | | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

District Judge Russell referred this case to the undersigned for all further proceedings on August 29, 2022. (ECF No. 17). Currently before the Court is a discovery dispute concerning the discoverability of Plaintiff's medical and mental health records for the period of January 1, 2017–present, as they relate to Plaintiff's claims for "garden variety" compensatory damages. (ECF Nos. 34 & 35). The issue has been fully briefed in accordance with the undersigned's informal discovery dispute procedures, and no hearing is necessary. (ECF No. 20); Loc. R. 105.6 (D. Md. 2021). For the reasons provided below, Plaintiff will be ordered to produce all medical records requested in Defendant's Request for Production of Documents No. 7 ("RFP No. 7"), except that any request seeking documents relating to the treatment of Plaintiff by a licensed counselor or therapist is—at this time—barred by Plaintiff's psychotherapist-patient privilege. Furthermore, the Court will not compel Plaintiff to sign a release for the properly requested medical records.

## I. Background

Plaintiff brings this retaliation and discrimination action against her former employer, Defendant IKEA US Retail, LLC,[1] under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). (ECF No. 1 at p. 1.). The pending discovery dispute is focused on Defendant's RFP No. 7, which requests that Plaintiff

> [p]roduce all documents concerning, referring or relating to any emotional distress or mental health condition allegedly suffered by the Plaintiff, or any treatment for same by a health care professional, counselor or therapist, sought by the Plaintiff between January 1, 2017 through the present, including but not limited to all medical and psychiatric records, progress notes, therapy records, x-rays, photographs, reports of medical, psychiatric or psychological professionals, prescription drug receipts, insurance claim forms or other payment records. Please execute HIPPA-compliant authorizations on the form attached hereto as Exhibit A for all such health care providers.

(ECF No. 35 at p. 1). In response, Plaintiff provided Defendant with the following objection:

> Objection. Plaintiff objects to the request on the basis that it is not likely to lead to discoverable information and seeks irrelevant information. Defendant's request is irrelevant as Plaintiff's claim is for discrimination and retaliation, for which discovery into a mental health condition is not indicated nor has such been made an issue in this action, and Defendant has failed to provide a proper justification for seeking discovery of the same given the above. Furthermore, because Plaintiff has not placed her mental health at issue, provided any records for any such treatment, nor otherwise waived privilege, Plaintiff will not now waive doctor-patient privilege through the production of information which is not discoverable in the instant case.

---

[1] In its Answer to the Complaint (ECF No. 7), Defendant notes that the Complaint improperly names Defendant as "Ikea US Retail, LLC." *Id*. at p. 1, n. 5. Defendant asserts that its correct legal name is "IKEA US RETAIL LLC." *Id*. However, neither party has made any attempt to correct this alleged error. The Court will refer to this case and Defendant by the name indicated on the docket.

*Id.* at pp. 1–2.[2] On January 6, 2023, the parties met and conferred via telephone, but a resolution was not reached. (ECF No. 32 at p. 1). The parties now seek Court intervention to determine to what extent, if any, Plaintiff must disclose the information requested in RFP No. 7.

In her Complaint, Plaintiff makes a vague request for "compensatory damages." (ECF No. 1 at p. 3, ¶ 14). To that end, Defendant served Plaintiff with an interrogatory requesting "each item of damages that Plaintiff claims in this action." (ECF No. 35 at p. 2). In response, Plaintiff stated that she is "seeking damages in excess of $100,000 for all losses, expenses, hardship, and pain and suffering." *Id.* Plaintiff's counsel confirmed that Plaintiff is seeking ongoing therapy as of January 6, 2023. *Id.* at p. 3. Furthermore, Plaintiff testified at her February 1, 2023 deposition that she has sought ongoing therapy for Post-Traumatic Stress Disorder. *Id.* Therefore, Defendant argues that RFP No. 7 is appropriate because "[c]ourts in the Fourth Circuit have found a plaintiff's medical records are subject to discovery where, as here, plaintiff has alleged a 'garden variety' compensatory damage claim . . . ." *Id.* at p. 3. In response, Plaintiff asserts that she has not placed her health at issue. (ECF No. 34 at p. 1). Furthermore, Plaintiff contends that the requested records are irrelevant, outside the scope of discovery, intrusive, overbroad, and in violation of Plaintiff's legally protected rights.

---

[2] The Court observes that the phrase "reasonably calculated to lead" is a commonly relied upon, though often misunderstood, discovery crutch. The Rules have been amended to make clear that the use of this discovery crutch—or any version of it—as an objection to or justification for discovery should no longer be part of either party's discovery lexicon. For additional guidance, *see, e.g.*, *Mt. Hawley Ins. Co. v. Adell Plastics, Inc.*, No. 17-00252-JKB, 2017 WL 3621184 (D. Md. Aug. 22, 2017).

## II. Analysis

### A. Plaintiff Has Put Her Physical and Mental Health at Issue, and RFP No. 7 Requests Relevant Medical Records.

"Federal rule of Civil Procedure 26(b)(1) permits a party to obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defenses." *Carpenter v. Res-Care Health Services, Inc.*, No. 3:12-cv-08047, 2013 WL, 1750464, at *1 (S.D. W.Va. Apr. 23, 2013). "Information within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "The rules of discovery are to be accorded broad and liberal construction." *EEOC v. Sheffield Financial LLC*, No. 1:06CV00889, 2007 WL 1726560, at * 3 (M.D.N.C. June 13, 2007) (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)) (other citation omitted). Therefore, "[t]he scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case." *Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010). "Although the pleadings are the starting point from which relevancy and discovery are determined . . . [r]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information." *Carpenter*, 2013 WL 1750464, at *1 (other citation omitted). "Rather, the general subject matter of the litigation governs the scope of relevant information for discovery purposes." *Id.* (other citation omitted). "A party resisting discovery bears the burden of explaining 'precisely why its objections are proper given the broad and liberal construction of the federal discovery rules.'" *Id.* (quoting *United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 411 (D. Md. 2005)).

Citing almost no caselaw, Plaintiff relies on assertions of overbreadth and intrusion to oppose RFP No. 7.[3] Plaintiff has requested vague compensatory damages in her Complaint, and Plaintiff has clarified through an interrogatory response that she is seeking damages for "pain and suffering." Because Plaintiff has alleged discrimination and retaliation absent any indication of physical force used against her, the Court can only interpret Plaintiff's allegation of "pain and suffering" to be mental or emotional in nature. *See EEOC v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 117–18 (S.D.N.Y. 2009) (Title VII case in which the plaintiffs alleged, inter alia, "non-pecuniary losses including pain, suffering, and humiliation," and the plaintiffs conceded such an allegation to constitute "garden-variety emotional distress."). Even in cases where a plaintiff alleges "garden variety" compensatory damages or emotional distress, courts have found that "medical and psychological information sought by [] interrogatories and requests for production are relevant as to both causation and the extent of plaintiff's alleged injuries and damages." *Carpenter*, 2013 WL 1750464, at *2 (quoting *Sheffield*, 2007 WL 1726560, at *4) (collecting cases in which courts deemed medical records relevant in light of a plaintiff alleging emotional distress or garden variety compensatory damages); *see, e.g.*, *Jimoh v. Charlotte-Mecklenburg Hous. P'ship, Inc.*, 2009 WL 4062881 (W.D.N.C. Nov. 20, 2009) ("A party claiming compensatory damages for emotional distress, pain and suffering, and mental anguish puts her mental and physical condition at issue and must produce requested medical records."). Except as further limited throughout the remainder of this Memorandum Opinion and Order, RFP No. 7 requests relevant and discoverable medical records.

---

[3] The Court recognizes that Plaintiff provides more extensive caselaw to support her argument for the applicability of her psychotherapist-patient privilege.

Plaintiff raises the argument that she is entitled to privacy regarding her medical records. (ECF No. 34 at p. 2). There is no doubt that "federal courts do recognize that patients have an interest in the privacy of their medical records, but this interest is not an absolute right, nor is it dispositive in all circumstances." *Sheffield*, 2009 WL 1726560, at *6 (citing *In re Grand Jury Subpoena John Doe*, No. A01-209, 197 F. Supp. 2d 512, 514 (E.D. Va. 2002)). However, "[f]ederal courts have held that the privacy of any individual and the confidentiality of the files may be protected by an appropriate protective order." *Sheffield*, 2009 WL 1726560, at *6 (other citation and internal quotations omitted). Defendant has expressed its willingness to "enter into a Protective Order in this case in order to facilitate the production of medical records." (ECF No. 35 at p. 3, n. 1). Therefore, the Court will direct the parties to draft a proposed protective order by March 13, 2023, for all medical documents Plaintiff produces in accordance with this Memorandum Opinion and Order.[4]

### B. Plaintiff Has Not Yet Waived Her Psychotherapist-Patient Privilege, and Records Protected By That Privilege Are Not Discoverable.

The parties appear to be equally confused regarding the privilege relevant to Plaintiff's records from her mental health provider(s). The United States Supreme Court "has recognized a psychotherapist-patient privilege, finding that psychotherapy serves 'a public good of transcendent importance.'" *U.S. v. Bolander*, 722 F.3d 199, 221 (4th Cir. 2013) (quoting *Jaffee v. Redmond*, 518 U.S. 1 (1996)). "In *Jaffee*, the Court held that confidential communications between a patient and a licensed social worker, during the course of diagnosis or treatment, are privileged and protected from discovery." *Bolander*, 722 F.3d at 221 (citing *Jaffee*, 518 U.S. at 15–16). "Thus, the privilege protects against compelled testimony concerning conversations between the patient

---

[4] The alleged occurrences giving rise to the case *sub judice* occurred in October and November 2018. (ECF No. 1 at p. 2, ¶¶ 6–12). The Court finds that limiting Defendant's inquiry into the medical records to the timeframe of January 1, 2017–present is sufficient and within the scope of discovery for this case.

and the licensed therapist, as well as compelled disclosure of notes taken during their counseling sessions." *Nichols Gas & Oil, Inc.*, 256 F.R.D. at 118 (other citation omitted). "While federal law recognizes a psychotherapist-patient privilege, *see Richardson v. Sexual Assault/Spouse Abuse Resource Ctr., Inc.*, 764 F. Sup. 2d 736, 739–41 (D. Md. 2011), it does not recognize a physician-patient privilege where, as here, subject matter jurisdiction is based on federal law . . . ." *Adams v. Sharfstein*, No. CCB-11-3755, 2012 WL 2992172, at *3 (D. Md. July 19, 2012) (other citation and internal quotations omitted). To the extent Plaintiff asserts a "doctor-patient" privilege, this Court does not recognize the applicability of such a privilege in the case *sub judice*. However, assuming Plaintiff's mental health providers are licensed therapists or were licensed therapist during any treatment Plaintiff received after January 1, 2017, the psychotherapist-privilege applies, and the Court must determine whether Plaintiff has waived that privilege.

The *Jaffee* Court stated, "Like other testimonial privileges, the patient may of course waive the protection[,]" but the Court did not discuss what might constitute such a waiver. *Jaffee*, 518 U.S. at 15, n. 14. The issue of waiving the psychotherapist-privilege has not been addressed by the United States Court of Appeals for the Fourth Circuit, and to this Court's knowledge, the issue has been examined by only two district courts within the Fourth Circuit. *See Vasconcellos v. Cybex Intern, Inc.*, 962 F. Supp. 701, 707–09 (D. Md. 1997) (finding the plaintiff waived psychotherapist-patient privilege by placing mental state at issue in sexual harassment suit claiming damages from "'severe emotional distress'" and by claiming intentional infliction of emotional distress); *Cappetta v. GC Servs. Ltd. P'ship*, 266 F.R.D. 121, 128–30 (E.D. Va. 2009) (distinguishing the broad, narrow, and middle ground approaches to waiver before seemingly adopting the middle ground approach).

7

"The broad view of wavier considers a plaintiff to have waived the protection of the psychotherapist-patient privilege merely by claiming emotional distress damages in a lawsuit, regardless of whether the plaintiff intends to use his or her psychotherapist's records or testimony in the suit." *Id.* at 128 (other citation omitted). "Court's adopting the narrow approach will find a waiver only if the party asserting the privilege affirmatively uses his or her mental condition in the case, such as when the cause of action relies on the diagnosis or advice of a party's psychotherapist." *Id.* (citing *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 229–30 (D. Mass. 1997) ("[S]o long as Plaintiff does not call as a witness a person who has provided her with psychotherapy, and does not introduce into evidence the substance of any communication with such a person, the communication between her and her psychotherapist is privileged.")). Under the middle ground approach, "some claims (such as intentional infliction of emotional distress) cause waiver, and some claims where a large portion of the requested damages arise out of claims of emotional distress also cause waiver." *Cappetta*, 266 F.R.D. at 129 (other citations and internal quotations omitted). "However, no waiver flows from emotional damages claims incidental to other claims, or from claims in which emotional distress damages do not predominate." *Id.*

This Court finds persuasive a recent opinion out of the United States District Court for the District of Oregon: *Swan v. Miss Beau Monde, Inc.,* 566 F. Supp. 3d 1048 (D. Or. 2021). In that case, the court rejected the broad approach as inapposite with the objectives described in *Jaffee*. *Swan*, 566 F.R.D. at 1063–64 (citing *Jaffee*, 518 U.S. at 10 (effective psychotherapy "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears . . . [and] the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.")). The *Swan* court also provides a critique of the middle ground approach:

8

> The term "garden variety emotional distress" is not a particularly useful metaphor or construct. . . . Courts in this circuit define garden variety emotional distress as ordinary or commonplace emotional distress, that which is simple or usual, or humiliation, embarrassment, anger, and other similar emotions. . . . This, however, is not a definition likely to produce predictable and consistent outcomes. . . . Relatedly, some courts applying the middle approach to waiver ask whether a plaintiff alleges unusually severe emotional distress or a specific psychiatric injury or disorder. . . . Asking whether emotional injuries are unusually severe, however, likely results in answers that are no more predictable and consistent than asking whether an emotional injury is "garden variety."

*Swan*, 566 F. Supp. 3d at 1064–65 (other citations and internal quotations omitted). The *Swan* court concluded, and this Court agrees, that "the narrow approach to waiver best reflects the principles underlying *Jaffee*." *Id.* at 1064. In adopting the narrow approach, the Court finds itself in the company of, at the least, the Second Circuit, Seventh Circuit, and Eighth Circuit. *Id.* at 1061 ("The Seventh and Eighth Circuits . . . appear to follow the narrow approach, albeit without much explanation."); *Nichols Gas & Oil, Inc.*, 256 F.R.D. at 121 ("In *Sims*, the Second Circuit acknowledged this divergent doctrinal approach to waiver and adopted the narrower view.")[5] (citing *Sims*, 534 F.3d at 134, 141)).

The *Swan* court provides an excellent overview of how the narrow approach works in practice. "First, the psychotherapist-patient privilege applies only to confidential communications between a person and his or her licensed psychotherapist or social worker for purposes of diagnosis or treatment." *Swan*, 566 F. Supp. 3d at 1066 (citing *Jaffee*, 518 U.S. at 15). "Thus, the identities of any licensed psychotherapists or social workers consulted by a plaintiff, as well as the dates of

---

[5] The Court recognizes that just as the phrase "garden variety" leads to confusion, the concepts of a broad, narrow, and middle ground approach may not be the same throughout each Circuit and their district courts. *See Nichols Gas & Oil, Inc.*, 256 F.R.D. at 120 (describing the narrow approach as one that finds no wavier when only "garden variety" emotional distress is alleged). This Court finds the narrow approach in *Swan* most consistent with the goals of the psychotherapist-patient privilege as outlined in *Jaffee*.

9

any such consultations, are *not* privileged and must be disclosed if relevant."[6] *Swan* 566 F. Supp. 3d at 1066 (emphasis in original). "Second, a plaintiff generally does not need to present expert testimony to seek emotional distress damages from a jury." *Id.* at 1066. However, if a plaintiff seeking damages for emotional injury presents an expert witness to support a claim for such damages, "care must be taken to ensure that the plaintiff is not attempting unfairly to use the psychotherapist-patient privilege as both a 'sword and a shield.'" *Id.* As explained by the Second Circuit,

> [F]airness considerations arise when the party attempts to use the privilege both as a "shield and a sword." In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.

*In re Grand Jury Procs.*, 219 F.3d at 182. Several conclusions reasonably follow from this principle, and such conclusions depend on whether a plaintiff's expert witness is a treating or non-treating expert. *Swan*, 566 F. Supp. 3d at 1066–67.

If a plaintiff presents expert testimony from a non-treating psychotherapist on the issue of emotional injury, "a court generally must determine whether the testifying expert is relying on any privileged communication, in whole or in part, to support that expert's opinion." *Id.* at 1067. If the expert does rely on such privileged communications, "fairness in the adversarial process demands that all relevant privileged communications to which that expert has been given access must be timely disclosed to the opposing party." *Id.* However, if a plaintiff plans to present expert testimony from a treating psychotherapist regarding emotional injuries, "there should be a presumption that all communications between the patient and the treating psychotherapist . . . must

---

[6] "If a defendant seeks discovery relating to any consultation that a plaintiff had with a licensed psychotherapist or social worker that predates the events or conduct at issue in the pending lawsuit, the requesting party may need to show how any such consultation is relevant and does not unduly invade the privacy interests of the plaintiff." *Swan*, 566 F. Supp. 3d at 1066, no. 13 (citing Fed. R. Civ. P. 26(c)(1) (discussing protective orders)).

be disclosed to the opposing party." *Id.* "Thus, if a plaintiff identifies a treating psychotherapist as a trial witness, all communications with that therapist must be timely disclosed." *Id.* Similarly, if a treating expert intends to become a testifying expert and has had access to confidential communications between the plaintiff and another psychotherapist that is part of the testifying expert's opinion, in whole or in part, "then in all fairness all such relevant communications also must be timely disclosed to the opposing party." *Id.*

With all that said, the Court finds that Plaintiff has not yet waived her psychotherapist-patient privilege. In her Complaint, Plaintiff merely alleges "compensatory damages," and Plaintiff made no mention of damages for "pain and suffering" until she responded to interrogatories. However, the Court is concerned with Plaintiff's February 1, 2023 deposition testimony regarding her ongoing therapy treatment for Post-Traumatic Stress Disorder. Furthermore, the Court recognizes that Plaintiff's counsel has confirmed Plaintiff's continued therapy treatment as of January 6, 2023. Although Plaintiff is walking a very precarious line at the moment, the Court does not yet find a waiver of her psychotherapist-patient privilege. However, the Court will provide instructions in its concluding remarks to this Memorandum Opinion and Order which will resolve any unknowns regarding Plaintiff's current expectations concerning her alleged damages for emotional injury.[7]

### C. The Court Will Not Compel Plaintiff to Sign a HIPPA-Compliant Medical Release.

In addition to an order compelling Plaintiff to provide the medical records Defendant requests in RFP No. 7, Defendant requests that this Court issue an order compelling "Plaintiff to

---

[7] The Court wishes to make clear that the psychotherapist-patient privilege does not extend "to include medical providers who are not psychotherapists, even if the treatment sought from the medical provider was a referral to a mental health professional or a prescription for medication to treat depression or anxiety." *Nichols Gas & Oil, Inc.*, 256 F.R.D. at 120.

11

provide signed medical information release forms . . . ." (ECF No. 35 at p. 1). Without further considering the obvious overbreadth of Defendant's proposed HIPPA release form,[8] the Court recognizes that Defendant has not provided the Court with a citation to any authority indicating that this Court holds such a power of compulsion regarding medical releases. To the contrary, courts in the Fourth Circuit have found that courts are without such power: "*In Fields v. West Virginia State Police*, 264 F.R.D. 260 (S.D.W.V. 2010), this [d]istrict [c]ourt addressed its authority to issue such an order, finding no basis in the Federal Rules of Civil Procedure that empowers a court to require a party to execute a release of medical records." *Carpenter*, 2013 WL 1750464, at *3.[9]

For the sake of efficiency, and in light of the proposed protective order the parties will file by March 13, 2023, the Court reminds the parties that a written authorization by Plaintiff is not necessary for Defendant to obtain Plaintiff's medical records. "The Health Insurance Portability and Accountability Act ("HIPPA"), 45 C.F.R. Parts 160, 164 . . . allows a health care provider to release medical information pursuant to a court order or pursuant to a subpoena not accompanied by a court order if certain conditions are met." *Carpenter*, 2013 WL 1750464, at *3 (citing 45 C.F.R. § 164.512(e)). In particular, 45 C.F.R. § 164.512(e)(1)(ii)(B) authorizes a health care provider to release protected health information pursuant to a subpoena "when the provider

---

[8] Plaintiff provided the Court with Defendant's proposed HIPPA medical authorization, and Plaintiff correctly points out that the document requests "all protected health information regarding the individual . . . ," and it fails to provide any sort of temporal limitations.

[9] This Court recognizes a split of authority regarding a federal court's power to compel the production of an executed medical release. *See Morris v. City of Colorado Springs*, No. 09-cv-01506-PAB-MEH, 2009 WL 4927618, at *2 (D. Co. Dec. 18, 2009). "The first view primarily looks to the plain language of [Federal Rule of Civil Procedure] 34 to conclude that records not in the party's possession may not be compelled and that Rule 34 does not permit the Court to order the party's signature on a medical release form." *Id.* (other citations omitted). "The second view generally permits an order compelling a signature on a release form when the party has placed his or her medical condition at issue in the case." *Id.* (other citations omitted). "However, even courts that compel authorizations from the plaintiff typically require the defendant first to seek the documents directly from the third party who has custody of the documents." *Id.* (other citations omitted). This Court sees no reason to break from precedent set by district courts in the Fourth Circuit, nor does it see reason to break from the plain language of Rule 34.

12

receives reasonable assurances from the party requesting the records that it has secured a qualified protective order that prohibits use of the records outside of the litigation and requires the return or destruction of the protected health information at the end of the litigation." *Carpenter*, 2013 WL 1750464, at *3.

### III.　Conclusion

Regarding any non-mental medical records requested in RFP No. 7, the parties shall provide a proposed protective order to this Court by March 13, 2023. Furthermore, Plaintiff has three options: (1) personally provide the non-mental medical records to Defendant, (2) sign a HIPPA-compliant release which both parties confer about and agree upon, or (3) ensure the protective order is drafted in such a manner that will allow Defendant to take that protective order and an accompanying subpoena and retrieve the records itself. Regarding the mental-health records sought in RFP No. 7, Plaintiff must clarify her intentions regarding her claim for emotional injury damages. Therefore, it is ORDERED that:

(1) Plaintiff shall, within twenty-eight (28) days of this Memorandum Opinion and Order, disclose to Defendant the identities of any licensed psychotherapists or social workers Plaintiff consulted after and including January 1, 2017. Furthermore, Plaintiff shall disclose the dates of any such consultations;

(2) If Plaintiff consulted any non-licensed psychotherapists after and including January 1, 2017, Plaintiff must disclose all information related to those consultations as nonprivileged; and

(3) Plaintiff shall, within twenty-eight (28) days of this Memorandum Opinion and Order, disclose to Defendant (a) whether Plaintiff intends to call any licensed psychotherapist (whether treating or non-treating) or other similar expert witness at trial to opine on Plaintiff's emotional injuries and (b) whether Plaintiff intends to reveal during her own testimony at trial any otherwise confidential communications with any such professional.

Within fourteen (14) days of Plaintiff disclosing the above information to Defendant, the parties shall confer in person or via telephone regarding what, if any, additional discovery Plaintiff

may need to produce consistent with this Memorandum Opinion and Order.  If the parties cannot resolve that question together, they may contact my Chambers to request a conference.  The current discovery deadline is February 27, 2023.  (ECF No. 27).  Because the Court's instructions to the parties will likely require time beyond this deadline, the Court orders that the parties provide the Court with a proposed discovery and dispositive motions deadline determined at the parties' mandated meet and confer.

Date: February 13, 2023                                                    /s/
                                                                                    J. Mark Coulson
                                                                                    United States Magistrate Judge