IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**KANEESHA R. STOKES,**                                    *

                                                          *

         *Plaintiff,*
v.                                                        

                                                          *          Civil Case No: 1:22-cv-01377-JMC

**IKEA US RETAIL, LLC,**                                  

                                                          *

         *Defendant.*                                     

                                                          *

                                                          *

*    *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kaneesha Stokes, filed this lawsuit against Defendant, IKEA US Retail, LLC, on June 6, 2022, alleging one count of unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f), *et seq.* ("Title VII"). (ECF No. 1). Presently before the Court are two motions: Defendant's Motion for Summary Judgment (ECF No. 51) and Plaintiff's Cross Motion for Summary Judgment in response (ECF No. 52). The Court has additionally considered the parties' respective oppositions and replies thereto, although Plaintiff chose not to file a reply in support of her cross motion. (ECF Nos. 52, 53). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, both motions will be denied.

## I.    BACKGROUND

Plaintiff began her employment with Defendant in June 2016 where she most recently held the position of "team leader" at all times relevant to her lawsuit. (ECF No. 1 at 2; ECF No. 51-5 at 7–8).[1] Defendant also employed Ms. Shannon Hughlett as a "Resolution Generalist" under

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

Plaintiff's supervision (ECF No. 51-1 at 10); Mr. Galen Derry as Plaintiff's direct supervisor (ECF No. 51-1 at 9; ECF No. 51-1 at 6–7); Ms. Tameisha Basnight as a Human Resources ("HR") "Business Partner" (ECF No. 51-1 at 11); Ms. Jennifer Kropp as an "After Sales Manager" (ECF No. 51-22 at 2); and Ms. Tyeesha Berman, Mr. Leopold Blackwood, and Ms. April Bell as team leaders (ECF No. 51-1 at 10).

On or about October 29, 2018, Ms. Hughlett informed Ms. Berman, Ms. Bell, and Plaintiff that she thought Mr. Blackwood was "creepy." (ECF No. 51-12 at 2). According to Ms. Hughlett, Mr. Blackwood made her feel uncomfortable by wrapping his arm around her shoulder and whispering an inappropriate comment about her t-shirt. *See id.* It is undisputed that Mr. Blackwood asked Ms. Hughlett to step into a private conference room shortly thereafter where Mr. Blackwood informed Ms. Hughlett that he was aware of her concerns, making Ms. Hughlett more uncomfortable. (ECF No. 51-1 at 10; ECF No. 52-1 at 6). Ms. Hughlett then reported her concerns and private encounter with Mr. Blackwood to Plaintiff on or about October 30, 2018. *Id.* Plaintiff attempted to escort Ms. Hughlett to Ms. Basnight's office that same day but was unable to do so because Ms. Basnight was not in her office at the time. (ECF No. 52-1 at 6). Accordingly, Plaintiff escorted Ms. Hughlett to HR the following morning where Ms. Hughlett made a formal complaint of sexual harassment and hostile work environment. *Id.*

Ms. Basnight directed Plaintiff to make temporary scheduling adjustments to separate Ms. Hughlett from Mr. Blackwood while an investigation was pending. (ECF No. 51-1 at 11–12). Defendant's internal investigation then revealed the following: Plaintiff did not modify Ms. Hughlett's schedule because Ms. Hughlett "won" that shift in a "shift bid" and it thus seemed unfair to Plaintiff to make Ms. Hughlett forfeit her winnings; Plaintiff disregarded Ms. Basnight's directive to refrain from directly communicating with Ms. Hughlett regarding the investigation

and Plaintiff falsely told HR that Plaintiff was doing so; and that Plaintiff and other co-workers, like Ms. Kropp, allegedly shared confidential information about the pending investigation.  (ECF No. 51-1 at 14, 16; ECF No. 52-1 at 7–8; ECF No. 53 at 16–17).

Defendant suspended Plaintiff on November 9, 2018—less than ten (10) days following Plaintiff assisting Ms. Hughlett report the alleged discrimination—while HR investigated whether Plaintiff breached her confidentiality obligations and was insubordinate during Mr. Blackwood's investigation.  (ECF No. 51-1 at 16; ECF No. 52-1 at 9).  Defendant ultimately concluded via that investigation that Plaintiff ignored HR's directive to adjust Ms. Hughlett's schedule and improperly had ongoing discussion with Ms. Hughlett and others about Mr. Blackwood's investigation, warranting Plaintiff's ultimate termination on November 15, 2018.  (ECF No. 51-1 at 17; ECF No. 52-1 at 9–10; ECF No. 51-16).

Plaintiff then filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant retaliated against Plaintiff "based on [Plaintiff's] participation in and assistance of Ms. Hughlett's opposition to an unlawful employment practice."  (ECF No. 1 at 3).  The EEOC subsequently issued Plaintiff a Right to Sue letter on March 10, 2022, after finding reasonable cause to believe that Plaintiff's allegations of retaliation were true.  *Id.*  The parties then engaged in discovery leading to the present motions.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party.  *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)).  However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

## III.     ANALYSIS

"Title VII prohibits employment discrimination based on 'race, color, religion, sex, or national origin,' 42 U.S.C. § 2000e–2(a), and its anti-retaliation provision serves to 'prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees.'" *Schmidt v. Town of Cheverly, Md.*, 212 F. Supp. 3d 573, 578 (D. Md. 2016) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63, (2006); 42 U.S.C. § 2000e–3(a)).  A *prima facie* case of retaliation "has three elements: the plaintiff must prove that [s]he (1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) that a causal link between the protected activity and the adverse employment action exists." *Ciociola v. Balt. City Bd. of Sch. Comm'rs*, No. CV CCB-15-1451, 2017 WL 4280729, at

*6 (D. Md. Sept. 27, 2017); *see also* 42 U.S.C. § 2000e-3(a).  Title VII specifies that protected

activity includes "assist[ing] . . . in an investigation, proceeding, or hearing" regarding allegations

of unlawful discrimination or retaliation thereunder.  42 U.S.C. § 2000e-3.

"Once the plaintiff has put forth a prima facie case, the familiar *McDonnell Douglas*

burden-shifting approach controls."  *Wooden v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. CIV.

JFM-03-3359, 2007 WL 2768905, at *4 (D. Md. Sept. 17, 2007); *see also Smith v. First Union*

*Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000) ("The *McDonnell Douglas* burden-shifting scheme

applies in analyzing retaliation claims under Title VII.").  "Under that framework, the defendant

has the opportunity to articulate legitimate, non-retaliatory reasons for the adverse employment

act(s) . . . If the defendant successfully articulates such reasons, the burden shifts back to the

plaintiff, who then must put forth evidence that the defendant's reasons are actually mere pretext

for prohibited retaliation."  *Wooden*, 2007 WL 2768905 at *4.

Plaintiff has set forth sufficient evidence from which a reasonably factfinder could make

out a *prima facie* case of retaliation.  Assisting Ms. Hughlett with reporting her alleged harassment

constitutes a protected activity.  *See* 42 U.S.C. § 2000e-3.[2]  Plaintiff also suffered an adverse

employment action because she was terminated.  *See Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x

217, 221 (4th Cir. 2013) (noting that plaintiff "clearly" suffered an adverse employment action

when she was terminated).  Moreover, the extremely close temporal proximity between Plaintiff's

protected activity and her termination is sufficient for a reasonable jury to conclude that there

exists a causal link therebetween.  *See Shaffer v. ACS Gov't Servs., Inc.*, 454 F. Supp. 2d 330, 335

(D. Md. 2006) ("[C]lose temporal proximity between the employee's protected conduct and the

---

[2] Defendant does not oppose this assertion "for purposes of summary judgment only."  (ECF No. 53 at 9); *see also* (ECF No. 52-1 at 27) (arguing that there exists a genuine dispute regarding whether Plaintiff engaged in protected activity).

adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.") (internal quotation omitted); *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783–84 (4th Cir. 2021) ("A plaintiff may attempt to demonstrate that a protected activity caused an adverse action through two routes.  First, a plaintiff may establish that the adverse act bears sufficient temporal proximity to the protected activity.") (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)).[3]

Under *McDonnell Douglas*, the burden then shifts to Defendant to articulate legitimate, non-retaliatory reasons for Plaintiff's retaliation.  Defendant argues that Plaintiff was terminated "because she failed to follow instructions and properly address a complaint of harassment, engaged in dishonest behavior during the investigation, and further failed to maintain the confidentiality necessary during the course of the investigation into Ms. Hughlett's allegations."  (ECF No. 51-1 at 19).  Specifically, Defendant proffers that Plaintiff was terminated because she violated Defendant's internal policies by (1) "gossiping" about the alleged harassment thereby violating the confidential nature of the investigation process; (2) "failing to follow HR's direction to modify

---

[3] Defendant cites *Israelitt v. Enterprise Services*, No. 18-cv-01454-SAG, 2021 WL 795150 (D. Md. Mar. 2, 2022), a case involving a retaliation claim under the Americans with Disabilities Act ("ADA"), for the proposition that "temporal proximity alone is not sufficient to establish the causation element of a retaliation claim."  (ECF No. 51-1 at 21).  But the Fourth Circuit more recently held otherwise in the specific context of adjudicating motions for summary judgment in Title VII cases.  *See Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 654 (4th Cir. 2021) ("First, the court erred by holding that temporal proximity alone cannot establish a causal relationship.  We have made abundantly clear that temporal proximity suffices to show a causal relationship.  We explained this in *Strothers v. City of Laurel*, 895 F.3d 317 (4th Cir. 2018).  A plaintiff may establish a causal relationship 'simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee *soon* after becoming aware of such activity.'") (quoting *Strothers*, 895 F.3d at 336) (emphasis added in *Sempowich*).  And while it is true that *Israelitt* was affirmed on appeal, the Fourth Circuit's ensuing opinion did not analyze whether temporal proximity alone is sufficient to establish causation as a matter of law in the Title VII context; rather, the Fourth Circuit analyzed only whether the plaintiff elicited sufficient evidence of causation in light of the defendant's proffered non-retaliatory reasons for plaintiff's termination under the ADA.  Additionally, *Sempowich* (and *Strothers*) post-dates the other cases Defendant relies upon for the same assertion: *Buchagen v. ICF Int'l, Inc.*, 650 F. App'x 824 (4th Cir. 2016), and *Dwizulski v. Mayor of Balt.*, No. DLB-18-277, 2020 WL 1034539 (D. Md. Mar. 3, 2020).  *See also Simpson v. Dep't of Juv. Servs.*, No. CV SAG-22-1719, 2024 WL 342901, at *7 (D. Md. Jan. 30, 2024) ("She has shown a close temporal proximity between her OFP complaint and her supervisors' investigation of her actions relating to the TCD solicitation.  Such evidence can be enough to establish a prima facie case of causation.").

schedules, as necessary, to prevent Ms. Hughlett from working with her alleged harasser"; and (3) failing to disclose pertinent information about the investigation and Ms. Hughlett to HR such as Plaintiff falsely affirming to HR that Plaintiff was not communicating with Ms. Hughlett regarding the investigation while it was pending.  *Id.* at 6–7, 14.  Put simply, Defendant proffers that Plaintiff's termination was the result of her "disruptive behavior and the negative impact on the good faith efforts of IKEA to respond in a timely and appropriate manner to Ms. Hughlett's concerns." *Id.* at 7.

The burden then shifts back to Plaintiff to demonstrate that the offered reasons are merely pretextual.  "[T]o show pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes of fact." *Sempowich*, 19 F.4th at 652 (citing *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019)); *see also Gray v. Koch Foods, Inc.*, 580 F. Supp. 3d 1087, 1125–26 (M.D. Ala. 2022) (noting that a Title VII retaliation plaintiff may demonstrate pretext by "demonstrating such weaknesses, implausibility, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [those reasons] unworthy of credence.") (internal quotation omitted).  "Once the plaintiff offers such circumstantial evidence, the case must be decided by a trier of fact and cannot be resolved on summary judgment." *Sempowich*, 19 F.4th at 652.  At this stage in the *McDonnell Douglas* framework, Plaintiff's "burden is only to show that the protected activity was a but-for cause of her termination, not that it was the sole cause." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 218 (4th Cir. 2016); *see also King v. Rumsfeld*, 328 F.3d 145, 154 (4th Cir. 2003) (Gregory, J., dissenting) ("To survive summary judgment, however, [plaintiff] need not squarely rebut his employer's explanation. Instead, [plaintiff] must cast sufficient doubt upon the genuineness of the

explanation to warrant a jury's consideration of possible alternative and discriminatory motivations for the firing.").

The Court finds that Plaintiff has met this burden.  First, Plaintiff has set forth sufficient evidence to suggest that Defendant inconsistently applied its internal disciplinary policies to those involved in the harassment incident and ensuing investigation.  For instance, Defendant's decision not to discipline Ms. Berman or Ms. Bell for failing to promptly report Ms. Hughlett's concerns in line with Defendant's internal policies.  Defendant's Harassment, Discrimination and Retaliation Prevention Policy requires that

> All supervisors and managers who receive a complaint or information about suspected discrimination, harassment, and/or retaliation, observe what *may be* discriminatory, harassing, and/or retaliatory behavior, or *for any reason* suspect that discrimination, harassment, and/or retaliation is occurring are required to report such suspected conduct to their Location Manager and HR Business Partner.

(ECF No. 51-2 at 3) (emphasis added).[4]  It further warns that "A supervisor's or manager's failure to report such conduct may result in disciplinary action, up to and including termination." *Id.*  The parties' depositions indicate that Ms. Hughlett told her harassment concerns to Ms. Bell, Ms. Berman, and Plaintiff; that Plaintiff was the only individual who reported Ms. Hughlett's concerns; and that neither Ms. Bell nor Ms. Berman were subject to discipline for failing to promptly report Ms. Hughlett's concerns.  *See* (ECF No. 52-2 at 4; 52-3 at 13–14).  Defendant contends that Ms.

---

[4] Plaintiff's argument that "whether [Defendant's] policies were insufficient to prevent discrimination" constitutes a material fact is unpersuasive, as the sufficiency of Defendant's anti-discrimination policies is irrelevant to whether Defendant unlawfully retaliated against Plaintiff for violating those policies.  Nor is there any claim of hostile work environment or vicarious liability for which the sufficiency of Defendant's anti-harassment policies may potentially be relevant.  (ECF No. 52-1 at 27).  Plaintiff's disagreement regarding whether she did, in fact, violate Defendant's internal policies and, if so, whether her termination was warranted, is likewise irrelevant to analyzing the parties' motions. *Id.* at 27–29; *see also, e.g.*, *E.E.O.C. v. Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d 89, 121–22 (D. Md. 2019) ("When the question at issue is whether the decision maker acted with discriminatory animus, only the perception of the decision maker is relevant to the question . . . In assessing a defendant's proffered reasons, the Fourth Circuit has repeatedly observed that it is not a court's province to decide whether an employer's reason for terminating an employee was wise, fair, or even correct, ultimately, so long as it truly was the reason for the employee's termination.") (internal quotations omitted).

Berman and Ms. Bell are not proper comparators in this regard because Plaintiff was "not terminated for failing to timely report an allegation of harassment."  (ECF No. 53 at 12, 14). However, Ms. Berman and Ms. Bell were nevertheless supervisory employees aware of Ms. Hughlett's harassment concerns who failed to follow Defendant's internal anti-harassment policies yet were not disciplined.[5]  In fact, Ms. Berman indicated in her "co-worker statement" that she told *Mr. Blackwood* about Ms. Hughlett's concerns instead of HR, which ultimately resulted in Mr. Blackwood confronting Ms. Hughlett and making Ms. Hughlett "feel even more uncomfortable." (ECF No. 51-13 at 2).

Moreover, Defendant noted in Ms. Kropp's "corrective action" document that Ms. Kropp was terminated in part due to her breaking "confidentiality by engaging with another Team Leader about the investigation"—the same conduct cited as grounds for Plaintiff's termination.  (ECF No. 51-22 at 2).  Ms. Kropp's co-worker statement also makes clear that the individual she broke confidentiality with regarding the investigation was Ms. Bell, yet there is no evidence suggesting that Ms. Bell was disciplined proportionally (or at all) for engaging in the same misconduct that Plaintiff and Ms. Kropp engaged in.  *See* (ECF No. 51-20; ECF No. 51-21); *see also Middleton v. Menlo Logistics, Inc.*, No. CA 5:11-3215-JMC-PJG, 2013 WL 787832, at *5 (D.S.C. Jan. 24, 2013), *report and recommendation adopted*, No. 5:11-CV-03215-JMC, 2013 WL 787897 (D.S.C. Mar. 4, 2013) ("The Fourth Circuit has recognized that selective application of a facially neutral policy can be probative of pretext."); *Russell v. Sessions*, No. 1:18-CV-163, 2018 WL 4137018, at *8 n.16 (E.D. Va. Aug. 29, 2018), *aff'd sub nom. Russell v. Harlow*, 771 F. App'x 206 (4th Cir.

---

[5] Defendant relatedly argues that "There is no evidence that Ms. Hughlett communicated to Ms. Bell that she was uncomfortable around Mr. Blackwood, or any other indication that Ms. Hughlett felt that she was being harassed because of her gender."  (ECF No. 53 at 14).  The Court finds this argument unpersuasive given Ms. Hughlett's statements provided to HR during the investigation.  *See* (ECF No. 51-12 at 2) ("I was speaking to another co worker about a T-shirt I was wearing.  [Mr. Blackwood] then stood up and gave me a half hug wrapping his arm around me and whispered in my ear 'but you are still fine' . . . On tuesday I walked over to [Ms. Bell] and told her what [Mr. Blackwood] had said to me and told her it was the word I used was creepy.").

2019) ("[A]lthough an employer's failure to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent, an employer's selective, erratic, or case-by-case application of a policy may suggest pretext.") (cleaned up). Defendant's arguments that Ms. Kropp was ultimately terminated for her misconduct (similar to Plaintiff) and that Ms. Hughlett was not terminated following her protected activity (unsimilar to Plaintiff) further propounds the genuine dispute of material fact as to whether Defendant's proffered reasons for Plaintiff's termination are pretextual, demonstrating that neither party is entitled to summary judgment.

The close proximity between Plaintiff's protected activity and her termination further supports a reasonable conclusion that she was terminated but-for her protected activity, even if not the sole cause. *Blasic v. Chugach Support Servs., Inc.*, 673 F. Supp. 2d 389, 400–01 (D. Md. 2009) ("An adverse employment action closely following protected activity may support an inference of pretext . . . A reasonable jury could find that the timing of [plaintiff's] termination raises an inference that he was fired because of his complaint."). Both these considerations also support the Court's conclusion *supra* that Plaintiff has set forth a genuine dispute of material fact as to the causation element of her *prima facie* case. *See Jaudon v. Elder Health, Inc.*, 125 F. Supp. 2d 153, 165 (D. Md. 2000) ("[F]actors pertinent to the causation element may include temporal proximity between the two events, an intervening pattern of retaliatory conduct, inconsistent reasons by the employer for adverse action, and differential treatment of other employees."); *Mohammed v. Cent. Driving Mini Storage*, 128 F. Supp. 3d 932, 947 (E.D. Va. 2015) ("In retaliation cases, the same type of evidence may be used to prove both the causal connection requirement and pretext."). Accordingly, the Court concludes that there exists a genuine dispute of material fact regarding Plaintiff's ability to demonstrate that she was unlawfully retaliated against in light of Defendant's

proffered legitimate, non-discriminatory reasons for Plaintiff's termination.  Summary judgment in favor of either party is therefore inappropriate.[6]

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 51) and Plaintiff's Cross Motion for Summary Judgment (ECF No. 52) are hereby DENIED.

Date: <u>February 13, 2024</u>                              <u>            /s/            </u>
                                                          J. Mark Coulson
                                                          United States Magistrate Judge

---

[6] The Court additionally notes that Plaintiff seems to misunderstand the standard applicable to her cross motion for summary judgment, as Plaintiff's motion insinuates that Plaintiff is entitled to summary judgment by virtue of Defendant not being entitled to summary judgment.  *See* (ECF No. 52-1 at 17, 21–22, 24).  In fact, Plaintiff's motion is undercut by the fact that Plaintiff expressly lists facts that she indicates are both material and subject to dispute between the parties (which have been addressed throughout this Memorandum Opinion).  *See id.* at 27–29; *see also* (ECF No. 52-1 at 30) ("[T]he Defendant cannot [be granted summary judgment] *as there are substantive facts that could directly impact the outcome of this matter and make summary judgment for the Defendant inappropriate.*") (emphasis added).  Plaintiff's motion will nevertheless be denied given the above reasoning.